1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

JODY GLEDHILL,          )     3:11-cv-779-RCJ-WGC
                        )
       Plaintiff,      )
                        )     **REPORT AND RECOMMENDATION**
   vs.                 )     **OF U.S. MAGISTRATE JUDGE**
                        )
MICHAEL J. ASTRUE,     )
Commissioner of Social Security,  )
                        )
       Defendant.    )
                        )

     This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Currently before the court is Plaintiff Jody Gledhill's Motion for Reversal of the Commissioner's Decision. (Doc. # 7.)[1] Defendant Commissioner filed an Opposition and Cross Motion for Summary Judgment. (Doc. # 10.) After a thorough review, the court recommends Plaintiff's motion should be denied and Defendant Commissioner's motion should be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

     At the time of the Commissioner's final, written decision, Gledhill was a thirty-four-year-old woman with an eleventh-grade education and a graduate equivalency degree. (Administrative Record (AR) at 42.) She previously worked as a customer service representative, a receptionist, a data entry clerk and an office manager. (AR at 42-44.)

---

[1] Refers to court's docket number.

1    On June 26, 2008, Gledhill filed an application for Disability Insurance Benefits ("DIB"),

2    alleging she became disabled on June 2, 2006, due to chronic right side abdominal nerve pain and

3    damage status post gallbladder surgery. (AR at 17, 161-169.) The Commissioner denied Gledhill's

4    application initially and upon reconsideration. (AR at 92-94.) Gledhill then requested a hearing to

5    challenge the Commissioner's determination. (AR at 95-96.)

6    On January 11, 2010, Gledhill, represented by counsel, appeared and testified at a hearing

7    before the Administrative Law Judge ("ALJ"). (AR at 36-82.) The ALJ followed the five-step

8    procedure for evaluating disability claims set forth in 20 C.F.R. section 404.1520, and issued a written

9    decision on March 2, 2010, finding Gledhill "not disabled" as defined in the Social Security Act and

10   denying her claim for DIB. (AR at 15-27.) Gledhill appealed this decision to the Appeals Council, who

11   denied review. (AR at 1-6.) As a consequence, the ALJ's decision became the Commissioner's final

12   decision.

13   Gledhill now appeals the decision to the district court, arguing the ALJ concluded she was not

14   disabled at step four by improperly finding she has the residual functional capacity ("RFC") to perform

15   her past relevant work. (Doc. # 7.)

16   ## II.  STANDARD OF REVIEW

17   The court must affirm the ALJ's determination if it is based on proper legal standards and the

18   findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454

19   F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social

20   Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial

21   evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d

22   1211, 1214 n.1 (9th Cir. 2005) (internal quotations and citation omitted). "It means such relevant

23   evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

24   *Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938));

25   *see Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (same).

26   To determine whether substantial evidence exists, the court must look at the record as a whole,

27   considering both evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d

28

2

748, 749 (9th Cir. 1995) (citation omitted). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Id.* at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The initial burden of proof rests upon the claimant to establish disability. 20 C.F.R. § 404.1512(a); *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986) (citations omitted). To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

## III. DISCUSSION

### A. Sequential Analytical Process of Determining Legal Disability

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If at any step the Social Security Administration ("SSA") can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. 20 C.F.R. §§ 404.1520(a)(4).

In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(i),(b); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combinations of impairments are "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.* Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" which include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling reaching, carrying, or handling; (2) [c]apacities for seeking, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5)

[r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521. If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id.*

In the third step, the Commissioner determines whether the impairment is equivalent to one of a number of specific impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1 (Listed Impairments). 20 C.F.R. §§ 404.1520(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. §404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen (15) years, which lasted long enough for the claimant to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a). The ALJ reviews the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of the work previously performed. *See id.; see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite her limitations. 20 C.F.R. § 404.1545. In determining RFC, an ALJ must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. *See* 20 C.F.R. § 404.1545(a).

At step four, the ALJ may consider any of the claimant's daily activities that "may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some

4

1   groceries"); *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding denial of benefits

2   based in part on determination that claimant performed daily activities that were transferrable to a work

3   setting). *But cf. Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities not transferrable to work

4   setting); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (claimant should not be "penalized for

5   attempting to lead [a] normal [life] in the face of [her] limitations"); *Fair v. Bowen*, 885 F.2d 597, 603

6   (noting that "many home activities are not easily transferable to what may be the more grueling

7   environment of the workplace, where it might be impossible to periodically rest or take medication").

8       A claimant can return to previous work if he or she can perform the "actual functional demands

9   and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the

10  [past] occupation as generally required by employers throughout the national economy." *Pinto v.*

11  *Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotations and citation omitted).

12      If the claimant can still do past relevant work, then he or she is not disabled for purposes of the

13  Act. 20 C.F.R. §§ 404.1520(f); *see also Berry*, 662 F.3d at 1231 ("Generally, a claimant who is

14  physically and mentally capable of performing past relevant work is not disabled, whether or not he

15  could actually obtain employment."). If, however, the claimant cannot perform past relevant work, the

16  burden shifts to the Commissioner to establish, in step five, that the claimant can perform work

17  available in the national economy. 20 C.F.R. §§ 404.1520(e), (f); *see also Yuckert*, 482 U.S. at 141-

18  142, 144. If the claimant cannot do the work he or she did in the past, the Commissioner must consider

19  the claimant's RFC, age, education, and past work experience to determine whether the claimant can

20  do other work. *Yuckert*, 482 U.S. at 141-42. If the Commissioner establishes that the claimant can do

21  other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566.

22  Conversely, if the ALJ determines the claimant unable to adjust to any other work, the claimant will

23  be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood v. Comm'r of Soc. Sec. Admin.*, 616

24  F.3d 1068, 1071 (9th Cir. 2010).

25  **B. ALJ Finding**

26      In this case, the ALJ applied the five-step sequential evaluation process. At step one, he found

27  Gledhill had not engaged in substantial gainful activity from the alleged onset date of June 2, 2006.

28                                                      5

1    (AR at 17.) At step two, he determined Gledhill suffered from the severe impairments of chronic right-

2    sided abdominal nerve pain and damage status post gallbladder surgery. (AR at 17.) The ALJ found,

3    at step three, Gledhill's "severe" impairments did not meet or equal any one of the Listed Impairments.

4    (AR at 18.)

5          At step four, the ALJ found Gledhill's alleged nerve damage in the right abdominal area

6    resulting from gallbladder surgery in May of 2006 could reasonably be expected to have caused her

7    alleged symptoms, including: chronic, sharp pain and numbness, which limits her ability to lift objects

8    and leaves her unable to move her right arm back and forth; inability to climb a flight of stairs; limited

9    ability to sit or stand for extended periods of time; and frequent sleep interruption. (AR at 19.) Despite

10   this finding, however, and after "careful consideration of the entire record . . ." (AR at 18), the ALJ

11   determined Gledhill nevertheless has the RFC to perform light work,[2] that she can move her

12   extremities well, and that she can occasionally crawl, crouch, kneel, stoop, twist, and climb ramps or

13   stairs but not ladders, ropes or scaffolds. (AR at 19, 20.)

14         The ALJ made this determination concerning Gledhill's RFC largely based on the testimony

15   of the vocational expert ("VE"). (AR at 23-24.) The VE testified that Gledhill could perform "light

16   work" (AR at 76) and that her past positions constituted such work under the Dictionary of

17   Occupational Titles ("DOT") (AR at 73-76). In determining Gledhill's RFC, the ALJ also relied upon

18   the absence of "significant diagnostic evidence" in Gledhill's treatment history that would support her

19   alleged symptoms. (AR 21.) The ALJ noted Gledhill's medical records indicate she refused to take

20   pain medication on several occasions (AR at 20-21) and that her diagnosis of morbid obesity may have

21   some causal link to her alleged symptoms (AR at 20). As a result, the ALJ found Gledhill's statements

22   concerning the intensity, persistence and limiting effects of these symptoms "not credible . . . ." (AR

23   at 19.) He further noted Gledhill's ability to care for herself and her children daily, perform light

24

25

26      [2] "Light work" involves lifting no more than twenty (20) pounds, with frequent lifting or carrying of objects weighing
        up to ten (10) pounds. 20 C.F.R. § 404.1567(b). A job is in this category if it involves a good deal of walking or standing,
27      or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. *Id.*

28                                                        6

1   cooking and cleaning, do laundry, shop and drive were inconsistent with her allegations of "chronic

2   debilitating pain that limits her functional capacities to perform work." (AR at 19.)

3       Ultimately, after consulting the VE's testimony and reviewing Gledhill's treatment history, the

4   ALJ concluded Gledhill, despite her limitations, was capable of performing her past relevant work as

5   a customer service representative, receptionist and data entry clerk, and that she was not disabled from

6   her alleged onset date of June 2, 2006, through the date of the decision. (AR at 22-24.) The ALJ's

7   analysis ended here at step four. He never reached step five. As a consequence, the court will not

8   conduct an analysis of step five. Instead, the court will now turn to a closer review of the ALJ's

9   determination at step four where Gledhill claims he erred in finding she was not disabled.

10  **C. Step Four Determination**

11      Gledhill contends the ALJ, when faced with an evidentiary conflict between testimony from

12  the VE and information contained in the DOT regarding her ability to perform her past relevant work

13  at step four, failed to provide a reasonable basis for relying on the VE's testimony. (Doc. # 7 at 4-6.)

14  According to Gledhill, the VE testified she could perform her past relevant work even though she

15  would be limited to sit/stand options, yet the VE conceded the DOT contains no sit/stand options for

16  any of the jobs it describes. (*Id.* at 5.) Gledhill claims this created a conflict that the ALJ was required

17  to resolve by providing a reasonable basis for his decision. (*Id.*) Gledhill asserts the ALJ failed to do

18  so and, as a result, the decision must be reversed. (*Id.*)

19      Conversely, the Commissioner argues the ALJ properly relied on the VE's testimony because

20  the ALJ was not presented with a conflict that was required to be resolved. (Doc. # 10 at 6.) The

21  Commissioner agrees with Gledhill's understanding of the VE's testimony that the DOT does not

22  reference a sit/stand option. (*Id.*) But the Commissioner asserts "[t]he fact that the DOT does not

23  reference a particular limitation [like a sit/stand option] does not create a conflict, nor is it fatal." (*Id.*)

24  The Commissioner contrasts this alleged conflict with a "true" conflict he describes hypothetically as

25  follows: where the DOT job description contains a requirement of frequent reaching–an act the

26  claimant cannot do–and the vocational expert testifies the claimant nonetheless can do the job. (*Id.*)

27

28                                              7

1    Alternatively, the Commissioner argues even if a conflict existed, the ALJ properly relied on the VE's

2    testimony because the VE provided sufficient support for his conclusion. (*Id.* at 7.)

3          At step four, the claimant bears the burden of showing she cannot perform her past relevant

4    work due to her severe impairments. *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986); 20 C.F.R.

5    § 404.1565(a). Of course, a finding by an ALJ that a claimant has the requisite RFC necessarily

6    precludes the claimant from satisfying this burden. *See, e.g., Berry*, 662 F.3d at 1231. As mentioned

7    previously, in determining the extent of a claimant's RFC, an ALJ must assess all evidence, including

8    the claimant's and others' descriptions of limitation, medical reports, and, if necessary, testimony from

9    vocational experts to determine the claimant's capacity for work despite her impairments. *See* 20

10   C.F.R. § 404.1545(a).

11         If an ALJ decides to rely on the testimony of a vocational expert regarding the requirements

12   of a particular job, or a particular kind of work, the ALJ must first inquire whether the vocational

13   expert's testimony conflicts with or deviates from the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1152

14   (9th Cir. 2007). Under SSR 00-4p, "[w]hen a [vocational expert] . . . provides evidence about the

15   requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any

16   possible conflict between that [vocational expert] . . . evidence and information provided in the

17   [Dictionary of Occupational Titles ]." SSR-004p at *4. The adjudicator, or ALJ, must also "obtain a

18   reasonable explanation [from the vocational expert] for any apparent conflict." *Massachi*, 486 F.3d

19   at 1153. "Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then

20   determine whether the vocational expert's explanation for the conflict is reasonable and whether a

21   basis exists for relying on the expert rather than the Dictionary of Occupational Titles." *Id.*

22         The court must note one important caveat to this analysis. If no conflict exists, "or if the

23   vocational expert had provided sufficient support for her conclusion so as to justify any potential

24   conflicts . . . ." an ALJ's failure to inquire about the conflict or obtain a reasonable explanation for it

25   would be "harmless . . . ." *Id.* at 1153-54 n.19.

26         Here, the VE, Tom Reed, testified before the ALJ and summarized Gledhill's occupational

27   history. (AR at 73-77.) In his summary, he described with specificity each of Gledhill's past

28                                                    8

1   positions–customer service representative, receptionist, data entry clerk and office manger. (AR at 73-

2   77.) His descriptions included, *inter alia*, exertional levels and the specific requirements of each job

3   (*e.g.*, fingering and temperamental requirements for the customer service representative position, or

4   repetitive or short-cycle work for the receptionist position). (AR at 73-77.)

5       Most importantly, he described each position with regard to the DOT and he provided the DOT

6   codes and skill levels for each position.(AR at 73-77.) For the customer service representative position,

7   the VE testified the "closest DOT . . . is 205.362-026," the skill level is 6, and that it "would generally

8   be consistent with the DOT characterization as falling within the light range of work." (AR at 73, 74.)

9   For the receptionist position, he testified "[t]he DOT for that is 237.367-038," the skill level is 4, and

10  "[t]he job as performed . . . depending upon how much walking and sitting that she did within a

11  particular shift . . . would generally be consistent with the description in the DOT." (AR at 74.) For

12  the data entry clerk position, he testified "the DOT Code is 203.582-054," the skill level is 4, and that

13  [t]he job as performed would appear to be sedentary, making it consistent with the description in the

14  DOT." (AR at 74, 75.) Finally, the VE testified "[t]he DOT Code for office manager is 169.167-034,"

15  the skill level is 7, and the job's requirements for reaching, handling, and fingering, as well as the

16  temperamental requirements are "in the DOT . . . .". (AR at 75.) After completing this summary of

17  Gledhill's occupational history, the VE concluded Gledhill could perform all of her past positions

18  "both as described in the DOT and as performed." (AR at 76.)

19      Gledhill's counsel then examined the VE about sit/stand options and whether such options are

20  included in the DOT. (AR at 77.) The VE responded that "[the DOT] does not . . . ." have a sit/stand

21  option for any job. (AR at 77.) Although Gledhill's counsel interpreted this response as an indication

22  of a conflict between the VE's testimony regarding Gledhill's ability to do sit/stand work and the

23  absence of any sit/stand analogue in the DOT, the VE responded that sit/stand options do not

24  "contradict the DOT. [They] simply [are] not addressed in the DOT." (AR at 77.)

25      Based on this record, the court finds the ALJ's decision to rely on the VE's testimony at step

26  four is supported by substantial evidence. The VE clearly stated that his conclusions about Gledhill's

27  occupational abilities neither contradicted nor conflicted with the DOT. The VE specifically noted

28                                          9

1   each position was generally consistent with the DOT, and he provided the DOT codes as well as

2   thorough descriptions of each position consistent with "light work," to support his opinions. The court

3   finds this testimony is sufficient to constitute substantial evidence that no conflict existed between the

4   VE's testimony and the DOT, and the ALJ therefore properly relied upon it.[3]

5       Even if a conflict existed, the court would still uphold the ALJ's decision on the grounds that

6   the VE provided sufficient support for his conclusion so as to justify any potential conflicts. The fact

7   that the DOT "does not provide information about *all* occupations . . . ." *Massachi*, 486 F.3d at 1153

8   n.17, constitutes a reasonable explanation for deviating from the DOT (*id.*). In this case, the VE

9   conceded the DOT does not contain a "sit/stand" option. This concession, however, provides no

10  grounds for reversal and remand of the ALJ's decision. The court finds the VE's testimony describing

11  Gledhill's occupational abilities within the context of the DOT constitutes substantial evidence upon

12  which the ALJ properly relied in determining Gledhill's ability to perform past relevant work at step

13  four.

## IV.  RECOMMENDATION

14      After carefully reviewing the record as a whole, **IT IS HEREBY RECOMMENDED** that

15  Gledhill's Motion for Reversal of the Commissioner's Decision. (Doc. # 7) be **DENIED** and

16  Defendant Commissioner's Opposition and Cross Motion for Summary Judgment. (Doc. # 10) be

17  **GRANTED**.

18      **IT IS FURTHER RECOMMENDED** that the decision of the ALJ be **AFFIRMED**.

19  DATED: October 4, 2012

20

21

22

23                          WILLIAM G. COBB
                            UNITED STATES MAGISTRATE JUDGE
24

25

26  ———————————

27      [3] In light of this finding, Commissioner's argument against reversal of immediate payment of benefits (Doc. # 10
    at 7-8) is moot.

28                                          10